United States District Court
Southern District of Texas
**ENTERED**
September 28, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| NELDA NUNCIO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:20-CV-92 |
| | § | |
| WEBB COUNTY *et al.*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nelda Nuncio filed this civil rights action on behalf of herself and as the administrator of Luis Alberto Barrientos' estate. Barrientos, Plaintiff's son, died while detained at the Webb County Jail. Plaintiff's First Amended Complaint sues thirty-two defendants: Sheriff Martin Cuellar, both in his official and individual capacity; Webb County; and thirty named and unnamed Webb County Jail staff members ("Jailer Defendants"), all of whom are sued in their individual capacities (Dkt. No. 24 at 2–4). Now pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 26). Having reviewed the pleadings, arguments, and applicable law, Defendants' motion to dismiss is hereby **GRANTED IN PART** and **DENIED IN PART** (Dkt. No. 26).

## <u>Background</u>

### I.    Factual Background

At this stage, the Court takes the well-pleaded facts alleged in the complaint as true. According to Plaintiff's First Amended Complaint, Barrientos was booked into Webb County Jail on June 26, 2018 as a pretrial detainee (Dkt. No. 24 at 5). While detained, Barrientos was "seriously, visibly ill" (*id.*). For days, Barrientos laid on the floor, wheezing, coughing up blood, and, until he lost the ability to speak, begging for medical attention (*id.* at 5–6). At one point, Barrientos became so weak that he defecated and urinated on himself as he laid in a fetal position (*id.* at 6). At first, Barrientos was unable to clean himself, as the Jailer Defendants refused to provide him toilet paper (*id.*). Later, Barrientos became so debilitated that he could not have cleaned himself, even if toilet paper had been supplied (*id.*).

Over several days, fellow detainees informed the jailers of Barrientos' worsening condition, advising that Barrientos had suffered hallucinations, had not eaten for days, and had laid motionless on the floor (*id.*). The jailers dismissed the detainees' requests, and at least one jailer stated Barrientos was "making it up" (*id.*). Raymond Reina, one of Barrientos' cellmates, spoke with a jailer identified in the pleadings as John Doe 2 (*id.* at 7). Reina requested that Barrientos receive medical attention, but John Doe 2 allegedly replied, "Leave him. That's one less we have to lock up" (*id.*).

Three days before Barrientos died, another detainee was released from the Jail (*id.* at 6). This individual contacted Plaintiff and told her that her son was ill, that he

was incapacitated on his cell floor, and that the detainees' pleas for medical attention went ignored (*id.*). Plaintiff then called the Jail and spoke with a corporal, identified in the pleadings as John Doe 1 (*id.*). Plaintiff informed John Doe 1 that her son had heart valve and kidney problems and needed to be taken to the hospital (*id.* at 6–7). To this, John Doe 1 allegedly responded, "[Y]eah, whatever" (*id.* at 7).

The Jailer Defendants neither took Barrientos to the hospital nor did they provide him any medical attention. On July 13, 2018, as some of the jailers were— not for the first time—dragging Barrientos to the showers, Barrientos died (*id.* at 7). The autopsy report identified Barrientos' cause of death as sepsis secondary to acute endocarditis and pneumonitis (*id.*). Within hours of Barrientos' death, Pedro Serna, another cellmate of Barrientos', died due to a lack of medical care (*id.* at 8–9). The Texas Rangers then conducted an investigation (*id.* at 5). They found Barrientos' cell was covered with feces, urine, and human waste (*id.*). Witnesses also advised that Barrientos' cell had an open sewage line, which caused sewage to back up onto the floor (*id.*).

Plaintiff claims Webb County and Sheriff Cuellar implemented two unconstitutional policies: (1) an admissions policy requiring jailers to prioritize the "speed of intake" in lieu of adequately identifying detainees' medical conditions, and (2) a policy of consistently refusing detainees medical care (*id.* at 13). In support, Plaintiff alleges the following: the deaths of Barrientos and Serna "are just two in a string of deaths caused by Webb County Jail's failure to satisfy its constitutional obligations to those in its care"; the jailers do not perform face-to-face observations of

detainees; and after observation, the jailers do not complete their required reports (*id.* at 8–10). Further, Plaintiff alleges that in 2017, Sheriff Cuellar publicly acknowledged the Jail lacked sufficient resources to care for its detainees and requested additional medical and mental health facilities (*id.* at 8). To date, the County has not provided these additional facilities (*id.*).

Plaintiff further asserts the Texas Rangers produced a report on Barrientos' death, which noted some jail staffers occasionally failed to look into Barrientos' and Serna's cell, despite having a legal obligation to do so (*id.* at 9). Further, the Texas Rangers uncovered evidence indicating three Webb County jailers—Defendants Jose Aguilera, Luis Manuel Ramos, and Jaime Magana—falsified classification and observation log entries related to Barrientos' incarceration and death (*id.*).

Lastly, Plaintiff alleges Sheriff Cuellar was aware of these practices and the deaths they have caused, but he nevertheless failed to train or supervise his staff to ensure his staff provided constitutionally adequate medical care to detainees (*id.* at 10).

## II.   Plaintiff's Causes of Action

Plaintiff asserts four causes of action (*id.* at 11–17). First, Plaintiff alleges the named and unnamed jailers, in their individual capacities, violated Barrientos' Fourteenth Amendment right to adequate medical care (*id.* at 11–12). Second, Plaintiff alleges Sheriff Cuellar, in his individual capacity, violated Barrientos' Fourteenth Amendment due process rights by implementing unconstitutional policies, failing to train jailers to provide constitutionally adequate medical care, and

failing to supervise jailers to ensure they provide adequate medical care (*id.* at 13–14). Third, Plaintiff alleges Sheriff Cuellar, in his official capacity, and Webb County, violated Barrientos' Fourteenth Amendment due process rights by implementing the aforementioned policies (*id.* at 14). Fourth, Plaintiff alleges the Jailer Defendants and Sheriff Cuellar, in their individual capacities, and Webb County are liable under the Texas Wrongful Death Statute ("TWDS") and the Texas Torts Claims Act ("TTCA") for negligently maintaining the Jail, which resulted in Barrientos' wrongful death (*id.* at 16–17).[1] Defendants then filed their motion to dismiss, which is now fully briefed and ripe for the Court's review (*see* Dkt. Nos. 26, 28, 29).

## Legal Standards

### I.    12(b)(6) Standard

Rule 12(b)(6) allows for dismissal if a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff

---

[1] Plaintiff, as the administrator of Barrientos' estate, also "asserts" a survival action against the Jailer Defendants and Sheriff Cuellar in their individual capacities and against Webb County (*id.* at 18). Although styled as a fifth "cause of action," survival actions do not form an additional basis for liability under Texas law. *See Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 515 (Tex. App.—Fort Worth 2001, pet. denied). Rather, Texas's Survival Statute allows a personal injury suit to survive the injured's death and permits the lawsuit to be prosecuted as if the decedent were alive. *See* Tex. Civ. Prac. & Rem. Code § 71.021; *Waters ex rel. Walton v. Del-Ky, Inc.*, 844 S.W.2d 250, 253–54 (Tex. App.—Dallas 1992, no writ); *see also Martinez v. Peterbilt Motors Co. Paccar Inc.*, No. SA-04-CA-0332-RF, 2004 WL 3218388, at *4 (W.D. Tex. Nov. 10, 2004). Because survival actions are not technically claims, the Court does not address Defendant's request to "dismiss" Plaintiff's fifth "cause of action" in her First Amended Complaint.

pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true, but labels and conclusions, formulaic recitations of the elements of a cause of action, or naked assertions devoid of factual enhancement are insufficient. *Twombly*, 550 U.S. at 555.

## II.   Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotations and citations omitted). As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court should not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

Further, qualified immunity is "immunity from suit rather than a mere defense to liability" and should, therefore, be resolved at the earliest possible stage in the litigation. *Harlow*, 555 U.S. at 231–32; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Because an early resolution of qualified immunity protects officials from

6

unwarranted liability and "costly, time-consuming, and intrusive" pre-trial discovery, it may be decided on a motion to dismiss. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Ruelas ex rel. Estate of Munoz v. Ford*, 402 F. Supp. 3d 344, 350 (E.D. Tex. 2019).

"To defeat a claim of qualified-immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). To rebut a defendant's claim of qualified immunity, the plaintiff must show: (1) the official's conduct violated the plaintiff's statutory or constitutional right, and (2) the official's conduct was objectively unreasonable in light of clearly established law at the time of the violation. *Id.*

With respect to the second prong, the constitutional right "must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). The "objective reasonableness" standard ensures that officers were on notice that their conduct was unlawful before they are subjected to a lawsuit. *Pearson*, 555 U.S. at 244. "The subjective intent of the officer is irrelevant, and the officer's knowledge of the law need not rise to the level of a 'constitutional scholar.'" *Sanchez*, 139 F.3d at 467 (citations omitted). In fact, objective unreasonableness can be established even where there is not a case directly on point, if the situation itself is so "extreme" that "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020). A court can begin its assessment with either prong,

but both must be answered in the affirmative to deny immunity. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

## Analysis

### I.   Plaintiff's Section 1983 Claims Against the Jailer Defendants in Their Individual Capacities

Plaintiff has sufficiently pled that the Jailer Defendants were deliberately indifferent with respect to Barrientos' constitutional right to adequate medical care. In so doing, Plaintiff has also sufficiently alleged the Jailer Defendants violated clearly established law and are, therefore, not entitled to qualified immunity at this early stage of litigation.

The Fourteenth Amendment entitles pretrial detainees like Barrientos to be free from punishment and to be provided with basic human needs, including medical care and protection from harm. *Hare v. City of Corinth*, 74 F.3d 633, 639, 650 (5th Cir. 1996) (en banc). A Fourteenth Amendment challenge by a pretrial detainee—or those suing on the detainee's behalf—"may be brought under two alternative theories," challenging either (1) an "episodic act or omission" or (2) a "condition of confinement." *See Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2009).

An episodic-act-or-omission claim "faults specific jail officials for their acts or omissions" causing the complained-of harm. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 1997). By contrast, a conditions-of-confinement challenge is a challenge to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Estate of Henson*, 795 F.3d at 463 (citing *Hare*, 74 F.3d at 644). Such conditions-of-confinement claims may challenge, for example, the number of bunks per cell, the

8

scope of a detainee's mail privileges, and the placement of a detainee in disciplinary segregation. *Id.* (citing *Shepherd*, 591 F.3d at 452). Here, Plaintiff alleges Barrientos' jailers acted with deliberate indifference by denying Barrientos medical attention despite his apparent deteriorating condition. Because this allegation faults specific officials for their conduct, the Court construes the pleading as asserting an episodic-acts-or-omissions claim against the Jailer Defendants.

To succeed on an episodic-acts-or-omissions claim under the Fourteenth Amendment, a pretrial detainee must show "subjective deliberate indifference" by the defendants. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). The deliberate indifference standard is "an extremely high standard to meet." *Thompson v. Campos*, 691 F. App'x 193, 194 (5th Cir. 2017) (per curiam). The detainee must show that the defendants actually knew of and disregarded a substantial risk of serious harm to the detainee's health or safety.[2] *Pena v. Givens*, 637 F. App'x 775, 784 (5th Cir. 2015) (per curiam). Thus, the failure to alleviate a substantial risk that the defendants "should have perceived, but did not" is insufficient to show deliberate

---

[2] This standard is known as the subjective knowledge test. Plaintiff argues the Court should only impose an objective knowledge test in light of the Supreme Court's holding in *Kingsley v. Hendrickson*, which held that courts should deploy an objective, as opposed to subjective, standard in excessive force claims brought by pretrial detainees (Dkt. No. 28 at 10 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). However, the Fifth Circuit has declined to extend *Kingsley* beyond such claims. *See Alderson*, 848 F.3d at 420 n.4 (expressly declining to follow the Ninth Circuit, which applies the objective standard to a detainee's failure-to-protect claim, and continuing to apply subjective test); *Cope v. Cogdill*, 3 F.4th 198, 206–07 (5th Cir. 2021) (applying subjective test for detainee's claim of inadequate medical care); *Kelson v. Clark*, 1 F.4th 411, 419–20 (5th Cir. 2021) (same). Accordingly, the Court only examines whether the Jailer Defendants were subjectively deliberately indifferent.

indifference. *Domino v. Tex. Dep't of Crim. Just.*, 329 F.3d 752, 756 (5th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). Likewise, acts of negligence or medical malpractice do not amount to deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, at the motion to dismiss stage, the detainee must set forth facts showing the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*

Plaintiff sufficiently alleges the Jailer Defendants acted with deliberate indifference in failing to provide Barrientos with medical attention. The First Amended Complaint avers the Jailer Defendants "saw [Barrientos] lying on the floor, incapacitated, wheezing, and coughing up blood" "for several days" (Dkt. No. 24 at 5–6, 12). Not only did Barrientos complain of chest pain and ask for medical attention, but other detainees also yelled to the Defendant Jailers that Barrientos "needed help" (*id.* at 12). Barrientos' cellmates complained at least seven times that Barrientos required medical care (*id.* at 6–7). Further, Plaintiff called the Jail herself about her son's needs, to which one Jailer Defendant allegedly stated, "yeah, whatever" (*id.*). At one point, Barrientos' cell became "covered" with fecal matter, urine, and other human waste, partially because Barrientos had become so weak that he was forced to defecate and urinate on himself (*id.* at 5–6).[3] Despite this, the Jailer Defendants

---

[3] In support, the Texas Rangers report allegedly confirms Barrientos' cell was filthy (*id.* at 9). The report also identified numerous discrepancies between observation logs and video footage of Barrientos' cell (*id.*). The Texas Rangers indicated three Jailer Defendants falsified information on the logs regarding Barrientos' death (*id.*).

"did not get [Barrientos] any medical attention at all" (Dkt. No. 24 at 7), nor are there any allegations that any Jailer Defendant ever called 911, consulted medical personnel in the facility, or attempted to provide a *de minimis* amount of medical aid.

Because the First Amended Complaint must be liberally construed in Plaintiff's favor, with all justifiable inferences afforded to Plaintiff, the Court accepts as true that: the Jailer Defendants—who "were at all times relevant to this action employed . . . as jailers at the Webb County Jail" (Dkt. No. 24 at 7)—*each* witnessed or learned of the circumstances described above, each knew of the substantial risk of harm to Barrientos, and each failed to provide medical care. Thus, Plaintiff plausibly alleges that each Jailer Defendant individually "refused to treat [Barrientos], ignored his complaints, intentionally treated him incorrectly," and wantonly disregarded Barrientos' need for medical attention. *Gobert*, 463 F.3d at 346.

The Jailer Defendants argue that Plaintiff's allegations must be more specific as to each individual Jailer Defendant to survive dismissal. The Court disagrees. Given the reasonable inferences outlined above, the Court is satisfied that Plaintiff has satisfied her burden to plead facts that provide fair notice of the nature of her Section 1983 claim, the grounds upon which her claim rests, and permit the Court to infer more than the mere possibility of misconduct on behalf of each Jailer Defendant. *See Gallaher v. City of Maypearl*, No. 3:17-cv-1400, 2018 WL 700252, at *3 (N.D. Tex. Feb. 2, 2018). In so concluding, the Court is mindful that this matter is in its procedural infancy, and at such an early stage of litigation, Plaintiff is not required to plead facts "peculiarly within the knowledge of defendants," as she has not had the

benefit of discovery. *Eachus v. Steelman*, No. 4:20-cv-324, 2021 WL 857988, at \*18 (E.D. Tex. Mar. 8, 2021) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995)); *see also Kelson v. Clark*, 1 F.4th 411, 418 (5th Cir. 2021) ("While we agree with Clark and Cox that the precise timeline of events is underdeveloped, 'detailed factual allegations' are not required at the pleadings stage.").

Additionally, the Jailer Defendants had sufficient notice that their conduct violated clearly established law. The case law is clear: "A prison guard is deliberately indifferent if he intentionally denies or delays access to medical care." *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *see also Alderson*, 848 F.3d at 422 (holding detainee plausibly pled deliberate indifference, as he claimed jailer "delayed his medical treatment by placing him in lockdown upon learning of his condition, waiting until numerous complaints had been made by [detainee] and his family before taking further action, and then leaving [detainee] for another hour before taking him to the hospital"); *Coleman v. Sweetin*, 745 F.3d 756, 765 (5th Cir. 2014) (reversing dismissal order where plaintiff alleged he told jailers he had broken his hip, could not move his leg, and could not use the toilet, but nonetheless jailers ignored his pleas for help); *Stewart v. Guzman*, 555 F. App'x 425, 426, 432 (5th Cir. 2014) (reversing grant of summary judgment, as evidence showed officials knew inmate was prone to asthma attacks and had a treatment plan, but nevertheless watched inmate lay on the floor during an attack); *Perez v. Anderson*, 350 F. App'x 959, 961–62 (5th Cir. 2009) (vacating dismissal order where detainee alleged jailers knew of his persistent pain, but delayed treatment for a substantial period).

Given this body of case law, no reasonable jailer could conclude that denying Barrientos medical care would pass constitutional muster. Moreover, Barrientos' situation was so "extreme"—as he spent days lying on the floor, wheezing, covered in his own waste, and coughing up blood and as multiple people made pleas for his medical care—that "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible." *Taylor*, 141 S. Ct. at 53; *see also Kelson*, 1 F.4th at 419 (holding detainee plausibly pled deliberate indifference, as he claimed officers observed his visible injuries, mocked him, and lied in their official report "to cover their tracks"). Because Plaintiff has sufficiently alleged that each Jailer Defendant violated clearly established law, the Jailer Defendants' prayer to dismiss Plaintiff's Section 1983 claim against them is hereby **DENIED**.

## II. Section 1983 Claims Against Sheriff Cuellar in his Official Capacity

Official capacity suits "generally represent only another way of pleading an action against an entity of which an official is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citation omitted). Because Plaintiff's Section 1983 claims against Sheriff Cuellar in his official capacity are duplicative of her Section 1983 claims against Webb County, discussed below, they are **DISMISSED**. *See Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020); *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001).

## III. Section 1983 Claims Against Webb County and Sheriff Cuellar in His Individual Capacity

It is well-settled that supervisory officers cannot be vicariously liable for the actions of their subordinates, and municipalities cannot be vicariously liable for the

13

actions of municipal employees. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 658 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). Accordingly, a plaintiff can only hold a supervisor and municipality liable under Section 1983 for their direct acts or omissions. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997); *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215–16 (5th Cir. 1998). If a supervisor or a municipality, through its policy or decision maker, enforces a policy or custom, or fails to train or supervise subordinates, and such acts result in the deprivation of a federal right, a viable Section 1983 claim against these defendants may exist. *See Dallas Indep. Sch. Dist.*, 153 F.3d at 215–16; *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994).

The standards for evaluating an unconstitutional policy claim or a failure-to-train claim against a supervisor and a municipality are substantially similar. *See Taylor Indep. Sch. Dist.*, 15 F.3d at 453. The Court will therefore evaluate Plaintiff's unconstitutional policy and failure-to-train-or-supervise claims against Webb County and Sheriff Cuellar in his individual capacity jointly.

## A. Unconstitutional Policies

Plaintiff alleges Webb County and Sheriff Cuellar violated Barrientos' due process rights by implementing two unconstitutional policies: (1) an admissions policy requiring jailers to prioritize speedy intake, which allegedly results in the failure to identify a detainee's medical needs, and (2) a customary policy of unconstitutionally refusing detainees medical care (Dkt. No. 24 at 13).

14

To prevail on an unconstitutional policy claim against a supervisor, a plaintiff must show (1) the supervisor implemented a policy so deficient that it repudiated the detainee's constitutional rights, and (2) the policy was "the moving force" of the constitutional violation. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Although sometimes phrased differently, the elements for an unconstitutional policy claim against a municipality are essentially the same. *See Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

An official policy "is ordinarily contained in duly promulgated policy statements, ordinances or regulations." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). However, a policy may also be evidenced by a custom, which the Fifth Circuit has defined as a "persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc).

"A customary policy cannot ordinarily be inferred from a single constitutional violation." *Piotrowski*, 237 F.3d at 581. Allegations that do not demonstrate "at least a pattern of similar incidents," *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005), do not establish the type of "permanent and well settled" practice amounting to a policy with the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) ("A pattern requires similarity and specificity; prior

indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.") (quoting *Estate of Davis*, 406 F.3d at 383) (cleaned up).

As for the "moving force" element, a plaintiff must show the policy was implemented with deliberate indifference and that the policy was a direct causal link to the deprivation of federal rights. *See Valle*, 613 F.3d at 542; *Porter*, 659 F.3d at 446. As already noted, deliberate indifference is a stringent standard of fault. *See Porter*, 659 F.3d at 446.

With respect to the first policy—the admissions policy resulting in a detainee's medical conditions going unidentified—Plaintiff has not plausibly alleged the policy was the "moving force" behind the violation of Barrientos' constitutional rights. To be sure, the pleadings plausibly allege Barrientos suffered greatly from a serious medical condition. The pleadings also plausibly allege the Jailer Defendants willfully denied rendering Barrientos medical aid. However, it is not plausible that the Jailer Defendants' alleged failure to identify Barrientos' health problems upon intake was the moving force behind his death. As alleged, Barrientos' death resulted from the Defendant Jailers' continued deliberate indifference over the course of two weeks. By the end, Barrientos was coughing up blood and lying on the floor, too debilitated to move, and the Jailer Defendants still failed to seek medical care. As such, Plaintiff has not plausibly alleged that, had the Jailer Defendants identified Barrientos' pre-existing medical conditions during intake, they would have altered their conduct. Because it cannot reasonably be inferred that an inadequate intake policy was the

16

"moving force" leading to Barrientos' sickness and death, this unconstitutional policy claim is **DISMISSED**.

With respect to the second policy—that the Jailer Defendants and other jail staff refused medical care as a matter of custom—Plaintiff has not plausibly alleged a customary policy. In her pleading, Plaintiff refers to the deaths of Barrientos and his cellmate, Serna, and "a string" of others who died as a result of inadequate care (Dkt. No. 24 at 8). Certainly, with respect to Serna, Plaintiff is entitled to the inference that Serna died under similar circumstances as Barrientos, given that Serna was housed in the same cell as Barrientos and died within hours of Barrientos. However, Plaintiff alleges no specific facts about the "string" of other deaths. Most importantly, Plaintiff fails to sufficiently allege that these individuals died as a result of inadequate medical care. Therefore, the Court is left with a single incident of deliberate indifference that resulted in the deaths of Barrientos and Serna. Without more, the Court cannot reasonably infer that a customary policy of denying medical care existed. *See Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (affirming dismissal where plaintiff merely alleged "the assault, beating, and severe injury to citizens . . . is a persistent, widespread practice"). Accordingly, this unconstitutional customary policy claim is also **DISMISSED**.

### B. Failure to Train or Supervise

To succeed on a failure-to-train-or-supervise claim against a supervisor or municipality, a plaintiff must establish (1) a failure to train or supervise the municipal subordinate or employee; (2) a causal link between the failure to train or

17

supervise and the violation of the plaintiff's federal rights; and (3) deliberate indifference in failing to train or supervise. *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008); *Ratliff*, 948 F.3d at 285. A showing of deliberate indifference in a failure-to-train-or-supervise claim generally requires that the plaintiff sufficiently alleges a previous pattern of similar constitutional violations. *Valle*, 613 F.3d at 548; *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "[A] showing of deliberate indifference is difficult, although not impossible, to base on a single incident." *Sanders-Burns*, 594 F.3d at 381. The single incident exception is "narrow." *Id.* For it to apply, the plaintiff must demonstrate that "the highly predictable consequence" of a failure to train or supervise would result in the specific injury suffered. *Id.* (quoting *Davis*, 406 F.3d at 386).

Here, Plaintiff does not sufficiently allege that Sheriff Cuellar or Webb County acted with deliberate indifference with respect to a failure to train or supervise. Plaintiff points to only Barrientos and Serna's deaths as specific constitutional violations. Regarding the "string" of deaths, Plaintiff's averment is conclusory. From these assertions alone, the Court cannot draw a reasonable inference that there was a pattern of inadequate training or supervision, or that Sheriff Cuellar or Webb County acted with deliberate indifference. For similar reasons, the single incident exception does not apply. Plaintiff merely alleges Sheriff Cuellar and Webb County failed to train or supervise the Jailer Defendants, and such a failure led to Barrientos and Serna's deaths (Dkt. No. 24 at 14–15). This unadorned statement does not

plausibly implicate the narrow single incident exception applies. *Sanders-Burns*, 594 F.3d at 381. Plaintiff's failure-to-train-or-supervise claim is **DISMISSED**.

### IV.   Texas Wrongful Death Claims Against the Jailer Defendants and Sheriff Cuellar

Plaintiff also brings a wrongful death claim against all the individual defendants, citing both the TWDS and TTCA (Dkt. No. 24 at 15–17). However, under the TTCA, if a suit is filed against both a government unit and any of its employees, the employees shall be dismissed on the filing of a motion by the governmental unit. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e). Here, the individual defendants are all employees of Webb County, and Webb County has moved to dismiss the individual defendants (*see* Dkt. No. 26 at 8). Accordingly, the wrongful death claims arising under Texas law are **DISMISSED** as to all individual defendants.

### V.   Wrongful Death Claim Against Webb County

Lastly, Plaintiff asserts a wrongful death claim against Webb County under the TWDS and TTCA (Dkt. No. 24 at 15–17). In response, Webb County contends that it enjoys sovereign immunity (Dkt. No. 26 at 8–9). Because Webb County is immune from suit under the TWDS, but not the TTCA, only Plaintiff's TWDS will be dismissed.

"Under the common-law doctrine of sovereign immunity, a municipality is immune from tort liability for its own acts or the acts of its agents unless the [TTCA] waives immunity." *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). Under Sections 101.021 and 101.022 of the TTCA, a governmental entity does not enjoy sovereign immunity for various claims, including injuries and deaths arising from

premises defects or the condition of real property. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.022; *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). Counties, as political subdivisions of the State of Texas, fall within the TTCA's purview. *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B); *Johnson v. Johnson Cnty.*, 251 S.W.3d 107, 109 (Tex. App.—Waco 2008, pet. denied). The TTCA, however, does not waive immunity for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057; *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

Here, Plaintiff alleges Barrientos' cell had an open sewage line, which resulted in sewage "back[ing] up onto the floor" (Dkt. No. 24 at 5). Plaintiff further alleges Barrientos became severely ill, and due to the Jailer Defendants' failure to render medical care, Barrientos died (*id.* at 5–7). Specific to her wrongful death claim, Plaintiff claims Webb County's negligent maintenance of the Jail actually and proximately caused Barrientos' death (*id.* at 17). From these allegations, Plaintiff has plausibly pled a negligent personal injury claim relating to the condition of real property or a premises defect. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.022; *Akins v. Liberty Cnty.*, No. 1:10-cv-328, 2014 WL 105839, at *24–25 (E.D. Tex. Jan. 9, 2014) (finding county did not have sovereign immunity from premises defect claim alleging a jail's collapsed sewer line led to injury). Thus, under the TTCA, Webb County does not enjoy sovereign immunity from Plaintiff's wrongful death claim, and the claim survives dismissal.

As for Plaintiff's wrongful death claim under the TWDS, the statutory language precludes Webb County from incurring liability. The TWDS provides that

a "person" will be liable for another's death under certain circumstances. *See* Tex. Civ. Prac. & Rem. Code § 71.002. Because counties are not "persons" within the meaning of the statute, they cannot incur liability under the TWDS. *See* Tex. Civ. Prac. & Rem. Code § 71.001; *Webb Cnty. v. Sandoval*, 88 S.W.3d 290, 297 (Tex. App.— San Antonio 2002, no pet.) (dismissing wrongful death claim arising under the TWDS, but permitting wrongful death claim under TTCA to survive); *Cnty. of El Paso v. Dorado*, 33 S.W.3d 44, 46 (Tex. App.—El Paso 2000, no pet.) (dismissing wrongful death claim arising under the TWDS). Plaintiff's TWDS wrongful death claim is therefore **DISMISSED**.

## Conclusion

Based on the foregoing, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Section 1983 claims against Sheriff Cuellar in his official and individual capacity, Section 1983 unconstitutional policy claim and failure-to-train-or-supervise claim against Webb County, and wrongful death claim under the TWDS are **DISMISSED WITH PREJUDICE**. However, the following claims remain pending: Plaintiff's Section 1983 claims against the Jailer Defendants in their individual capacities and her TTCA wrongful death claim against Webb County.

It is so **ORDERED**.

**SIGNED** September 28, 2021

Marina Garcia Marmolejo
United States District Judge